UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**In re:**

|  |  |  |
|---|---|---|
| **Brian R. Castleberry,** | ) | Case No. 04-04428-TOM-13 |
|  | ) |  |
| **Debtor.** | ) |  |

## MEMORANDUM OPINION AND ORDER

### I. Background

The matter before the Court is a <u>Motion for Relief from Stay</u> filed by Cora Jean Mindler ("Movant") for the estate of John Mindler[1] on January 14, 2004. After notice, a final hearing was held on February 10, 2005. Appearing were Michael Antonio for the Debtor, Brian Castleberry ("Debtor"); Michael Hensley for the Movant; D. Sims Crawford, the Chapter 13 Standing Trustee; the Debtor; and the Movant.

This Court has jurisdiction pursuant to 28 U.S.C. §§1334(b), 151, and 157(a) (1994) and the district court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[2] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C.

---

[1] The Movant testified that as of the hearing date a probate estate had not been opened for her father, John Mindler.

[2] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

§157(b)(2)(G).³ The Court must decide whether the Movant should be granted relief from the automatic stay. The matter was submitted on the testimony of the Debtor; the Movant and Charles Mindler; the pleadings; the exhibits received into evidence; and the arguments presented by counsel.⁴

## II.  Findings of Fact ⁵

On or about September 20, 2001, the Debtor purchased a parcel of real property ("Property") in Shelby County, Alabama from John and Kathleen Mindler (the "Mindlers"). The total sale price for the Property was either $25,000.00 or $26,000.00.⁶ In connection with the purchase, the Debtor executed a "Real Estate Mortgage Note" ("Note") for $22,000.00 plus interest at 5 % to be paid at $300.00 per month until the balance was paid in full. Debtor's Exhibit 3. The Mindlers simultaneously executed a Warranty Deed conveying the Property to the Debtor and his wife, Leslie Castleberry.⁷ Debtor's Exhibit 2. The Movant testified that there was an oral agreement between the Debtor and the Mindlers that the Debtor could reduce the monthly payments to $275.00 until the Mindlers removed certain items from the Property. Charles Mindler testified that there were

---

³ 28 U.S.C. §157(b)(2)(G) provides:
    (b)(2)Core proceedings include, but are not limited to–
        (G) motions to terminate, annul, or modify the automatic stay[.]

⁴ The Court also takes judicial notice of the Chapter 13 Trustee's Interim Statement dated February 1, 2005 for the Debtor's case.

⁵ Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. See ITT Rayonier, Inc. v. U.S., 651 F.2d 343 (5th Cir. Unit B July 1981); Florida v. Charley Toppino & Sons, Inc., 514 F.2d 700, 704 (5th Cir. 1975).

⁶ Neither the Debtor nor the Movant remembered the exact purchase price.

⁷ The Warranty Deed, which was recorded in the Shelby County Probate Court, notes that a mortgage was also recorded in connection with the sale; however, a copy of the recorded mortgage was not submitted into evidence by either party.

2

Case 04-04428-TOM13    Doc 38    Filed 02/14/05    Entered 02/14/05 14:46:15    Desc Main
Document      Page 2 of 11

numerous vehicles, boats and other large pieces of machinery located on the Property. These were apparently the items that Mr. Mindler was storing on the Property. There was no deadline for removing these items and as of the hearing date the items had not been removed from the Property. The Movant testified that she believed she was barred from removing the items because of the automatic stay.

In addition to the real property, the Debtor also purchased the two house trailers ("Trailers") located on the Property in "As Is" condition. Debtor's Exhibit 1. The Debtor testified that when he purchased the Trailers they were in extreme disrepair and needed substantial renovations to make them inhabitable. Among other things, he patched holes in the floors and repaired damaged plumbing. At one time the Debtor and his wife lived in one of the Trailers but currently live with the Debtor's ailing father in a residence five minutes from the Property.[8] The Debtor testified that he stops by the Property several times each week to pick up his mail and check the condition of the Property. The Movant testified that, since the Debtor vacated the Property, the condition of the Trailers and septic tank(s) and lines servicing them has deteriorated due to non-use. Photographs showing the condition of the Property and the Trailers as of January 18, 2005 were submitted to the Court. Movant's Exhibit 1.

According to testimony given at the hearing the Property's value has not decreased since the Debtor purchased it in 2001. The Movant testified that she believes the Property, even without the Trailers, is now worth between $25,000.00 and $30,000.00. The Debtor testified that the Property was assessed at $30,500.00 and that he could sell the Property for $30,000.00. The Debtor also

---

[8] There was a dispute during the hearing of exactly when the Debtor and his wife vacated the Property. Whether the Debtor lived on the Property at the time of filing or the 341 meeting does not affect the outcome of this Motion for Relief.

3

testified that the Trailers' value was negligible and did not increase the Property's value.

Mr. Mindler died in April, 2003 and after his death the Debtor continued making payments on the Note, sending payments directly to the Movant.[9] According to the Movant's testimony, the money was then divided between herself and her siblings. The Debtor testified that he sometimes fell behind on payments to the Movant but tried to "catch them up" the following month. There was conflicting testimony about how often the Debtor was late on payments and how long it took him to catch up. When this case was filed in May, 2004 the Debtor had already paid nearly half of the amount due under the Note. See Debtor's Exhibit 4.

The Debtor, through his counsel, filed a $12,706.00 Proof of Claim on behalf of the Mindlers for the remaining balance due under the Note as of the filing date. Proof of Claim #10. The Debtor's Chapter 13 plan provides that this debt will be repaid at $300.00 per month with an interest rate of 5%, the same terms as the original Note. The $25.00 per month oral reduction to the contract price was not included in the plan. The Debtor's Chapter 13 plan payments are being directly deducted from his paycheck. As of the hearing date, over $1,600.00 had been disbursed on the claim.[10] The Movant testified that she had received a number of payments from the Trustee but was unable to negotiate the checks because they were made payable to her deceased father.

### III. Conclusions of Law

A party is entitled to relief from the automatic stay pursuant to § 362(d)(1) of the Bankruptcy Code "for cause, including the lack of adequate protection of an interest in property of such party ...."

---

[9] Mrs. Mindler apparently predeceased her husband although there was no testimony about when she died.

[10] This amount is based on the Trustee's Interim Statement dated February 1, 2005.

4

11 U.S.C. § 362(d)(1).[11] A party is also entitled to relief from a stay of an act against property under § 362(d)(2) if the debtor does not have equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2).[12]

In a hearing on a motion for relief from an automatic stay, the party requesting relief has the burden of proof on the issue of the debtor's equity in the Property, while the debtor has the burden of proof on all other issues. 11 U.S.C. § 362(g).

### A. Equity and Necessity for Reorganization under §362(d)(2)

#### 1. Equity

It was established at the hearing that the Property's current value is between $25,000.00 and $30,000.00. The Debtor and the Movant agreed that, as of the filing date, the total outstanding

---

[11] 11 U.S.C. § 362(d)(1) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--

    (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

[12] 11 U.S.C. § 362(d)(2) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–

    (2) with respect to a stay of an act against property under subsection (a) of this section, if–
        (A) the debtor does not have an equity in such property; and
        (B) such property is not necessary to an effective reorganization;

principal debt owed by the Debtor on the Property was $12,706.00.[13] According to the February 1, 2005 Trustee's Interim Statement $11,606.56 remains due on the claim. As of that date the Trustee had disbursed over $1,600.00 on the claim. No evidence was presented showing that the Property's value was decreasing. The value of the Trailers is negligible and does not affect the overall Property value. Therefore, the Court finds that the Debtor had at least $13,000.00 equity in the Property at the time of the hearing, and the Movant failed to meet her burden of proving that the Debtor had no equity in the Property.

### 2. Necessary for Reorganization

Section 362(d)(2) provides that both subsections (A) and (B) of § 362(d)(2) be satisfied before relief from stay may be granted. A court must find that "the debtor does not have an equity in such property; and such property is not necessary to an effective reorganization." 11 U.S.C. §362(d)(2). Although the Debtor is not currently living there, he still receives his mail there and intends to resume his residence. The Court finds that the Property is his residence, and he is only temporarily located at his father's. This residential property is reasonable in cost and will allow the Debtor to pay for his other obligations through his plan and the Chapter 13 Trustee. Thus, the Property is necessary for the Debtor's effective reorganization.

Because the Debtor has equity in the Property and the Property is necessary for an effective reorganization, the Movant is not entitled to relief from the stay pursuant to 11 U.S.C. § 362(d)(2).

### B. Cause, Including a Lack of Adequate Protection under §362(d)(1)

According to 11 U.S.C. § 362(d)(1), the court shall grant relief from the stay upon a showing

---

[13] This amount was reflected in the Proof of Claim # 10 filed by the Debtor on behalf of John Mindler.

6

of "cause" including the lack of adequate protection of the Movant's interest in the Property. Cause under § 362(d)(1) is not defined by the Bankruptcy Code. Courts are left to determine whether cause exists for granting a relief from stay based on the totality of circumstances in each case. Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3rd Cir.1997); In re Brown, 290 B.R. 415, 423 (Bankr. M.D. Fla. 2003). Legislative history indicates that the "'facts of each request will determine whether relief is appropriate under the circumstances.'" In re Mazzeo, 167 F.3d 139, 142 (2nd Cir. 1999)(quoting H.R.Rep. No. 95-595, at 343-44 (1977), reprinted in 1978 U.S.C.C.A.N. 6300).

The Court should "consider the policies underlying the Bankruptcy Code as well as the competing interests of the creditor, debtor, and other parties in interest" when exercising its discretion in granting a motion for relief for cause. In re Borbidge, 81 B.R. 332, 335 (Bankr. E.D. Pa. 1998). Thus, cause is an inherently broad and flexible concept, allowing the bankruptcy court to resolve matters based the unique facts of each situation.

### 1. Adequate Protection

Adequate protection is not explicitly defined in the Bankruptcy Code. However, the legislative history of the Code reveals that adequate protection is a concept meant to "insure that the secured creditor receives the value for which he bargained." Martin v. United States (In re Martin), 761 F.2d 472, 474 (8th Cir. 1985) (quoting S. REP. No. 989, 95th Cong., 2d Sess. 53, reprinted in 1978 U.S.C.C.A.N. 5787, 5839). The secured creditor's benefit of his bargain includes receipt of principal and interest payments, and upon default thereof the right to foreclose on its interest in the property and to sell the property and reinvest the proceeds. In re Wolsky, 53 B.R. 751, 755 (Bankr. D. N.D. 1985). Congress intended for the value received by the secured creditor to be a concept adaptable to the "varying circumstances and changing modes of financing" with respect to each

7

Case 04-04428-TOM13   Doc 38   Filed 02/14/05   Entered 02/14/05 14:46:15   Desc Main
Document    Page 7 of 11

bankruptcy case. Martin, 761 F.2d at 474, (quoting H.R. REP. No. 595 at 339, 1978 U.S.C.C.A.N. 5963, 6295). In other words, whether a creditor is adequately protected should be determined on a case-by-case basis.

The Code provides illustrations of what constitutes adequate protection ensuring that the secured creditor receives the value of his bargain. Under 11 U.S.C. §§361(1) and (3),[14] a secured creditor could receive periodic cash payments for depreciation of the value of its interest in the collateral during the plan or other relief which is the "indubitable equivalent" of that creditor's interest in the collateral during the plan. The phrase "indubitable equivalent" is also not defined in the Code, although Congress intended for it to mean "realization by the [secured party] of the value of its interest in the property involved." Martin, 761 F.2d at 476 (quoting H.R. Rep. No. 595 at 340, 1978 U.S.C.C.A.N. 5963, 6296).

While periodic adequate protection payments are one way to protect a secured creditor, an "equity cushion may itself provide adequate protection, obviating the need for periodic payments to protect the entity against the decline in value." 3 Collier on Bankruptcy ¶ 361.03[1] (Lawrence P. King, ed., 15th ed. rev. 1999). Judge Benjamin Cohen noted that "if a debtor has equity in a property

---

[14] 11 U.S.C. §§361(1) and (3) provide:

When adequate protection is required under section 362. . . of this title of an interest of an entity in property, such adequate protection may be provided by--

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title. . . results in a decrease in the value of such entity's interest in such property; . . .

(3) granting such other relief. . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

8

sufficient to shield the creditor from either the declining value of the collateral or an increase in the claim from accrual of interest or expenses, then the creditor is adequately protected." In re Mathews, 208 B.R. 506, 510-11 (Bankr. N.D. Ala. 1997) (quoting In re James River Assocs., 148 B.R. 790, 796 (E.D. Va. 1992)).

It was undisputed and thus established that the Debtor had at least $13,000.00 equity in the Property at the time of the hearing. There was no evidence that the Property value was declining or that the equity cushion was likely to be reduced. Further, the Debtor is paying the Trustee on a regular basis so the Mindlers' claim will receive periodic payments. In fact, as the Movant receives these additional disbursements from the Trustee the equity cushion will grow. Therefore, the Court finds that the Movant is adequately protected by both the periodic payments and by the equity cushion in the Property and is not entitled to relief from the automatic stay for lack of adequate protection under 11 U.S.C. §362(d)(1).

## 2. Other "Cause"

In addition to lack of adequate protection, the Bankruptcy Code provides that the stay may be lifted for other "cause." It is unclear, however, precisely what other "cause" the Movant feels presents sufficient grounds for lifting the automatic stay.

The Movant contends that the Debtor is committing waste against the Property by not maintaining the Property and Trailers. Based on the testimony, however, it seems that the Debtor's improvements to at least one of the Trailers actually increased its value by making it liveable. Further, the Movant offered no evidence that the Debtor was committing waste to the Property itself. If any continuing waste is being committed against the Property it is the Movant's failure or inability (because of the bankruptcy stay) to remove the junk vehicles and other debris from the Property. The

9

Case 04-04428-TOM13    Doc 38    Filed 02/14/05    Entered 02/14/05 14:46:15    Desc Main
Document      Page 9 of 11

Movant has offered no other "cause" for lifting the stay.

The Court finds that no adequate cause exists for lifting the stay, and the Movant is not entitled to relief from stay under §362(d)(1).

### C. Other Relief

The Movant testified that she would have removed her father's vehicles, boats and other items from the Property but believed she was barred from doing so by the automatic stay. Therefore, the Court lifts the automatic stay for the limited purpose of allowing the Movant, and/or her agent(s), to contact the Debtor to make arrangements to enter the Property and remove the vehicles, boats and other items being stored thereon.[15] Further, based on the oral agreement between the Debtor and Mr. Mindler, the Court finds that the Debtor is entitled to a $25.00 per month credit from the date of filing until June, 2005.

### IV. Conclusion

Based on these findings and conclusions, the Court finds that the Movant's Motion is due to be **GRANTED** in part and **DENIED** in part.

Accordingly, it is hereby **ORDERED, ADJUDGED and DECREED** that:

1. The <u>Motion for Relief from Stay</u> filed by Cora Jean Mindler is **DENIED** in part;
2. The <u>Motion for Relief from Stay</u> filed by Cora Jean Mindler is **GRANTED** in part to allow the Movant and/or her agent(s) to contact the Debtor to make arrangements to enter the Property for the limited purpose of removing vehicles, boats and other items belonging to Mr. Mindler which were subject to the oral agreement between Mr. Mindler and the Debtor; and
3. The Debtor is entitled to a $25.00 per month credit from May, 2004 until June, 2005 from the Movant for storage of Mr. Mindler's property unless that property is

---

[15] The Court acknowledges that this type of relief was not requested in the Movant's Motion. However, because the Movant testified that she wishes to remove the items from the Property, the Court will *sua sponte* treat the Motion as though it had requested such relief and partially grant the Motion as to that specific relief.

10

removed sooner, in which case the credit shall be calculated through the month of removal. The Trustee is directed to reduce the claim by $300.00 ($25.00 per month for 12 months.)

Done this 14th day of February, 2005.

                                        **/s/ Tamara O. Mitchell**
                                        Tamara O. Mitchell
                                        United States Bankruptcy Judge

TOM:jdg

cc:     Michael Antonio, Attorney for Debtor
        Michael A. Hensley, Attorney for Movant
        Cora Jean Mindler, Movant
        D. Sims Crawford, Chapter 13 Trustee